1  Martin C. Fliesler (State Bar No.: 073768)
   Larry T. Harris (State Bar No.: 209044)
2  Michael L. Robbins (State Bar No.: 224087)
   FLIESLER MEYER LLP
3  Four Embarcadero Center
   Fourth Floor
4  San Francisco, California  94111
   Telephone: (415) 362-3800
5  Facsimile: (415) 362-2928

6  Kirk W. Watkins (*pro hac vice*)
   William A. Capp (*pro hac vice*)
7  Michael A. Cicero (*pro hac vice*)
   WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
8  One Atlantic Center, Suite 3500
   1201 West Peachtree Street
9  Atlanta, GA 30309
   Telephone:  (404) 872-7000
10 Facsimile: (404) 870-4836

11 Attorneys for Plaintiff KEY TRAK, INC.

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14               **SAN FRANCISCO DIVISION**

15 KEYTRAK, INC.,

16       Plaintiff,                        Civil Action No.:  C-03-00870 WHA

17 v.                                      HEARING DATE AND TIME:
                                           Thursday, February 26, 2004 at 8:00 a.m.
18 KEY REGISTER, L.L.C., KEY
   REGISTER SYSTEMS, INC., and KEY         **PLAINTIFF'S MOTION TO EXCLUDE**
19 MANAGEMENT, INC.,                       **EXPERT TESTIMONY OF DR. JAMES R.**
                                           **ADAMS, NOTICE OF MOTION, AND**
20       Defendants.                       **SUPPORTING MEMORANDUM OF**
                                           **POINTS AND AUTHORITIES**
21

22

23

24 _____

   Plaintiff's Motion to Exclude Expert Testimony of Dr. James R. Adams
   Case No.:  C-03-00870 WHA

# TABLE OF CONTENTS

                                                                                              **Page**

I.     STATEMENT OF ISSUE TO BE DECIDED ................................................ 1

II.    INTRODUCTION ....................................................................................... 1

III.   CHRONOLOGY RELATING TO EXPERT DISCOVERY .......................... 2

IV.    GOVERNING EVIDENTIARY PRINCIPLES ........................................... 3

V.     ANALYSIS OF DR. ADAMS' TESTIMONY ............................................. 5

       A.     The Court Should Exclude All Testimony Regarding Obviousness.... 5

              1.     Testimony on the Ultimate Issue of Obviousness is
                     Inappropriate. .......................................................................... 5

              2.     Dr. Adams Improperly Attempts to Supplement His Initial
                     Report with Exhibit 7 from His Reply Report, Which is Not
                     Limited to the Rebuttal of the Harris Report.. ......................... 6

              3.     Dr. Adams Fails to Provide Motivations for All Asserted
                     Prior Art Combinations, in Violation of the Court's Patent
                     Local Rules.. ............................................................................ 9

              4.     Dr. Adams' Analysis Relies Upon Two Prior Art References
                     That are Subject to Exclusion for Not Having Been Disclosed
                     in Key Register's Invalidity Contentions................................ 10

              5.     Dr. Adams Cannot Testify About Secondary Considerations,
                     Rendering Unreliable any Testimony About the Ultimate
                     Issue of Obviousness.............................................................. 13

       B.     The Court Should Exclude All Testimony Regarding
              Unenforceability. ................................................................................ 17

              1.     Dr. Adams Cannot Testify on the Ultimate Issue of
                     Unenforceability, Which is a Question of Law ...................... 17

              2.     Dr. Adams is Not Qualified to Testify on Inequitable
                     Conduct Issues ....................................................................... 18

              3.     Dr. Adams Does Not Know the Standard of Materiality........ 19

              4.     Dr. Adams' Testimony on Materiality is Incomplete ............. 21

i

5.    Dr. Adams' Testimony on Intent Will Not Help the Jury,
      Since the Jury Will Not Likely Hear Evidence of Intent ........ 24

Plaintiff's Motion to Exclude Expert Testimony of Dr. James R. Adams
Case No.:  C-03-00870 WHA

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Atmel Corp. v. Information Storage Devices, Inc.,*
   1998 WL 775115 (N.D. Cal. 1998) ............................... 12

*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.,*
   807 F.2d 955 (Fed. Cir. 1986)...................................... 13

*Daubert v. Merrell Dow Pharms., Inc.,*
   509 U.S. 579 (1993)........................................................ 4

*Dayco Prods., Inc. v. Total Containment, Inc.,*
   329 F.3d 1358 (Fed. Cir. 2003)................................... 20

*Elsayed Mukhtar v. California State Univ., Hayward,*
   299 F.3d 1053 (9th Cir. 2002)
   *amended on other grounds,* 319 F.3d 1073 (9th Cir. 2003) ...................... 3, 4

*Graham v. John Deere Co. of Kansas City,*
   383 U.S. 1 (1966) ........................................................... 7

*Hebert v. Lisle Corp.,*
   99 F.3d 1109 (Fed. Cir. 1996).................................... 21

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137(1999)...................................................... 3,4

*McHugh v. United Serv. Auto. Ass'n,*
   164 F.3d 451 (9th Cir. 1999) ........................................ 5

*Micro Chem., Inc. v. Lextron, Inc.,*
   317 F.3d 1387 (Fed. Cir. 2003).................................... 3

*McGinley v. Franklin Sports, Inc.,*
   262 F.3d 1339 (Fed. Cir. 2001).................................... 6

*PerSeptive Biosys., Inc. v. Pharmacia Biotech, Inc.,*
   225 F.3d 1315 (Fed. Cir. 2000)................................... 18

*Reiffin v. Microsoft Corp.,*
   270 F.Supp.2d 1132 (N.D. Cal. 2003) ......................... 4

*Revlon Consumer Prods. Corp. v. L'oreal S.A.,*
   1997 WL 158281 (D. Del. 1997)................................. 18

- iii -

*United States v. Duncan,*
    42 F.3d 97 (2d Cir. 1994)............................................................ 5

*United States v. Hankey,*
    203 F.3d 1160 (9th Cir.), *cert. denied,* 530 U.S. 1268 (2000)...................... 4

### Statutes and Rules

35 U.S.C. § 103(a) .......................................................................................... I, 5, 6

FED. R. EVID. 702 ...................................................................................... 4

37 C.F.R. § 1.56(b) (1998).......................................................................... 20

- iv -

Plaintiff's Motion to Exclude Expert Testimony of Dr. James R. Adams
Case No.:  C-03-00870 WHA

1   NOTICE IS HEREBY GIVEN THAT, on Thursday, February 26, 2004 at 8:00

2   a.m., KeyTrak, Inc. ("KeyTrak"), Plaintiff in the above-styled action, will move the

3   Court for an order excluding proposed expert testimony from Dr. James R. Adams in its

4   entirety.

5
## I.   STATEMENT OF ISSUE TO BE DECIDED
6
        Should the Court exclude in its entirety expert testimony proposed by Defendants,
7
    namely, proposed expert testimony from Dr. James R. Adams on the issues of
8
    obviousness and unenforceability, on the ground that such testimony does not comply
9
    with Rule 702 of the Federal Rules of Evidence?
10

11
## II.   INTRODUCTION
12
        This is a patent infringement case, in which KeyTrak has asserted infringement by
13
    Defendants[1] of Claims 1, 2, 3, 6, 7, and 9 (collectively, "the Asserted Claims") of U.S.
14
    Patent No. 6,501,379 ("the '379 Patent").  The Court granted summary judgment of
15
    infringement and also dismissed Defendants' "best mode" invalidity defense.[2]  The
16
    remaining affirmative defenses comprise invalidity due to obviousness under 35 U.S.C.
17
    § 103(a) and unenforceability due to inequitable conduct.[3]  In support of those two
18
    defenses, Defendants offer, *inter alia*, expert testimony from Dr. James R. Adams.

19   ――――――――――――――――――――
    [1] "Defendants" refers collectively to all three named defendants, *i.e.*, Key Register,
20   L.L.C., Key Register Systems, Inc., and Key Management, Inc.  The first two of these
     defendants are herein referred  to collectively as "Key Register," the third as "KMI."

21   [2] Dkt. No. 176, Order on KeyTrak's Motion for Partial Summary Judgment (10/09/03).

22   [3] *See* Dkt. No. 102, *Amended Answer and Counterclaim* of Key Register, at pp. 5-6, and
     Dkt. No. 125, *Amended Answer* of KMI, at pp. 4-5.
23

24

――――――――――――――――――――――――――――――――――――――――
Plaintiff's Motion to Exclude Expert Testimony of Dr. James R. Adams
Case No.:  C-03-00870 WIIA

1    Dr. Adams cannot testify on the ultimate issue of obviousness, because that is a

2    question of law, and such testimony would invade the province of the Court.  Nor should

3    the Court permit Dr. Adams to testify about the factual inquiries underlying an

4    obviousness determination, because his testimony as to those inquiries is incomplete,

5    indefinite, and is founded upon erroneous views of governing law and references subject

6    to exclusion.  Consequently, such testimony is neither helpful to the jury nor reliable, in

7    violation of Rule 702 of the Federal Rules of Evidence.

8    The Court already expressed its awareness that the issue of unenforceability

9    (inequitable conduct) is a question of law; therefore, Dr. Adams cannot testify as to that

10   ultimate issue.  Nor should Dr. Adams be allowed to testify about the underlying

11   analytical prongs of materiality or intent.  Dr. Adams is not a patent law expert, he has no

12   grasp of the standard of materiality, and testimony concerning the existence of intent

13   would be conclusory and invasive of the province of the Court, which has already

14   indicated a desire to hear intent evidence out of the presence of the jury.

15   ## III.    CHRONOLOGY RELATING TO EXPERT DISCOVERY

16   The *Case Management Scheduling Order* entered in this case required opening

17   expert reports to be served on November 28, 2003 [Dkt. No. 82 at ¶ 7].  However, the

18   Court granted in part a stipulation, extending that deadline to December 12, 2003,

19   extending the expert discovery cut-off date to January 9, 2004, and ordering the parties to

20   reach an agreement concerning deadlines for service of opposition and reply reports [Dkt.

21   No. 203, 11/21/03].

22

23

24                                        - 2 -

On December 12, 2003, Defendants served Dr. Adams' Initial Expert Report (hereinafter "the Adams Initial Report").[4]  Pursuant to agreed-upon deadlines, KeyTrak served the Opposition Report of Dr. James Harris (hereinafter "the Harris Report") on December 23, 2003, and Defendants served Dr. Adams' Reply Expert Report (hereinafter "the Adams Reply Report") on December 29, 2003, one day before the agreed-upon deadline for service of reply reports.[5]  On January 6, 2003, KeyTrak deposed Dr. Adams.

## IV.   GOVERNING EVIDENTIARY PRINCIPLES

"Whether proffered evidence should be admitted in a trial is a procedural issue not unique to patent law, and therefore we review the district court's decision whether to admit expert testimony under the law of the regional circuit, here the [Ninth] Circuit." *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003).

"The trial court's 'special obligation' to determine the relevance and reliability of an expert's testimony is vital to ensure accurate and unbiased decision-making by the trier of fact." *Elsayed Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002) (*quoting Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)), *amended on other grounds*, 319 F.3d 1073 (9th Cir. 2003).  As the Ninth Circuit interpreted the applicable rule:

---

[4] *See* Exhibit C to accompanying *Affidavit of Michael A. Cicero in Support of Plaintiff's Motion to Exclude Expert Testimony of Dr. James R. Adams* (hereinafter "Cicero Aff."). As ¶ 5 of that Affidavit indicates, Exhibit C only includes, for brevity purposes, the text of the Adams Initial Report plus Attachments 1 and 2 to that Report.

[5] *Id.* at ¶ 6 & Exhibit D.

- 3 -

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is admissible pursuant to Rule 702 if it is both relevant[7] and reliable.

> [7] Encompassed in the determination of whether expert testimony is relevant is whether it is helpful to the jury, which is the "central concern" of Rule 702.

*Elsayed Mukhtar*, 299 F.3d at 1063 & n.7 (citations omitted). Similarly, this Court holds:

> To be admissible, expert testimony must be (1) based on sufficient facts and data, (2) the product of reliable principles and methods, and (3) the result of the application of those principles and methods reliably to the facts of the case.

*Reiffin v. Microsoft Corp.*, 270 F.Supp.2d 1132, 1144-45 (N.D. Cal. 2003) (*citing* FED. R. EVID. 702, *Kumho*, and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).

The Ninth Circuit requires district courts "to make *some* kind of reliability determination to fulfill its gatekeeping function." *Elsayed Mukhtar*, 299 F.3d at 1066 (italics in original). "A trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding *how* to determine the testimony's reliability." *Id.* at 1064 (*citing Kumho*, 526 U.S. at 152, and *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir.), *cert. denied*, 530 U.S. 1268 (2000)). Thus, reliability need not always be gauged by the *Daubert* factors, and those factors "simply are not applicable" when "reliability depends heavily on the knowledge and experience of the expert, rather than on the methodology or theory behind it." *Hankey*, 203 F.3d at 1168 & 1169.

Mindful of the fact that juries can give more weight to experts' testimony because of "the aura of authority experts often exude," the Ninth Circuit prohibits experts from offering legal conclusions. *Elsayed Mukhtar*, 299 F.3d at 1063-64 & n.8. In that regard:

- 4 -

1    However, **an expert witness cannot give an opinion as to her *legal conclusion*,
     *i.e.*, an opinion on an ultimate issue of law.** *E.g., McHugh v. United Serv. Auto.*

2    *Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999); *United States v. Duncan*, 42 F.3d 97,
     101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to

3    reach, this does not *aid* the jury in making a decision, but rather attempts to
     substitute the expert's judgment for the jury's.") (emphasis in original).

4
     *Id.*, 299 F.3d at 1065 n.10 (emphasis added; italics in original)].

5

6              V.      <u>ANALYSIS OF DR. ADAMS' TESTIMONY</u>

7    A.      <u>The Court Should Exclude All Testimony Regarding Obviousness.</u>

8              1.      **Testimony on the Ultimate Issue of Obviousness is Inappropriate.**

9                       a.      **Facts**

10             According to his Initial Report, Dr. Adams was qualified as an expert witness on

11   the subjects of "microelectronics hardware and software," electrical engineering,

12   "hardware design," and memories.[6]   Defendants' counsel retained Dr. Adams "as an

13   expert witness to provide an expert opinion on the validity of [the '379 Patent], assigned

14   to KeyTrak, Inc. ('KeyTrak')."[7]

15             Dr. Adams believes that the ultimate question of obviousness is one of fact.[8]

16   Dr. Adams begins his discussion of obviousness at Part V. of his Initial Report (pp. 7-12),

17   skips a number of pages, then resumes his discussion concerning that topic at Part VII.D.

18   (beginning at p. 26 of the report).  Part V.A. of the report purports to recite legal

19   principles concerning obviousness analysis under 35 U.S.C. § 103(a); however, there is

20   [6] Cicero Aff. Exh. C at p. 2, ll. 13-19;  *see also id.* at Attachment 1 (*curriculum vitae*).

21   [7] *Id.* at p. 1, ll. 5-8.

22   [8] Cicero Aff. at ¶ 11 & Exhibit I, excerpts from Transcript of  Dep. of Dr. James R.
     Harris (01/06/04), at 35:17-25.

23

24                                          - 5 -

1   no citation to legal authority, nor is there any indication that Dr. Adams was asked to

2   assume the correctness of the stated legal propositions.  Part V.A. also states:

3       In accordance with 35 U.S.C. Section 103(a), I have determined the scope and
        content of the prior art, ascertained the differences between the prior art and the
4       claims at issue, and resolved the level of ordinary skill in the pertinent art.
        Against this background, I determined the obviousness or nonobviousness of each
5       of the claims as a whole in the '379 Patent.[9]

6       In the Conclusion of the Adams Reply Report (Part V), Dr. Adams reiterates that

7   he is giving opinion testimony on the ultimate issue of obviousness:

8       For the reasons set forth in my December 12, 2003 Report, my September 4
        Affidavits, and in this Rebuttal Report, it is my opinion that each of the claims in
9       KeyTrak's '379 Patent, as a whole, is rendered obvious based on the combination
        of material prior art I have referenced, and that the '379 Patent is invalid under 35
10      U.S.C. § 103(a).[10]

11          **b.      Argument**

12      "It remains the province of the court to determine, whether in light of all the facts

13   properly, if only implicitly, found by the jury, the claimed invention would have been

14   obvious."  *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1362 (Fed. Cir. 2001).

15   Thus, Dr. Adams' testimony on that ultimate issue is improper under Ninth Circuit law.

16          **2.    Dr. Adams Improperly Attempts to Supplement His Initial Report
                with Exhibit 7 from His Reply Report, Which is Not Limited to the
17              Rebuttal of the Harris Report.**

18          **a.      Facts**

19      As seen from the Adams Initial Report, no heading or subheading  addresses

20   "differences between the prior art and the claims at issue," a *Graham* factor in an

_____

21   [9] Cicero Aff. Exh. C at ll. 8-11.

22   [10] *Id.* at p. 31, ll. 8-11.

23

24                      - 6 -

_____

1  obviousness determination.[11,12] In his opposition report, Dr. Harris exposed a fundamental

2  flaw in the Adams Initial Report, namely, its failure to assess the *Graham* factor of

3  differences between the prior art and the asserted claims.

4       Dr. Adams responds to Dr. Harris' critique, quoted in block text *supra*, by

5  presenting, for the first time, the tables appearing as Exhibit 7 to the Adams Reply

6  Report, introducing them with the following paragraph:

7       My objective for the Claims Charts in my December 12 Report was to
        supplement the Examiner's analysis to include those references that were not
8       before the Examiner to demonstrate how these additional references render even
        the new claims invalid.  To clarify my December 12 Report, I have prepared a
9       chart *similar to those which Dr. Harris prepared to analyze the 'technology gap'*;
        but I have included all claims and all prior art references individually to show
10      how each reference individually teaches specific technical elements of the claim
        limitations.  (*See* Exhibit 7).  This chart demonstrates that for each claim
11      limitation, one or more of the prior art references explicitly teaches the claim
        limitation, while the other references support the conclusion of obviousness,
12      particularly when combined with other references.  Therefore each of the asserted
        claims as a whole is rendered obvious in light of these prior art references.[13]

13      Even more recently, on the afternoon during the preparation of this Brief,

14  Defendants' counsel transmitted a letter to KeyTrak's counsel, advising that Dr. Adams

15  was unilaterally making "corrections" to Exhibit 7 to the Adams Reply Report.  The letter

16  acknowledges that the "corrections" were made subsequent to Dr. Adams' deposition.[14]

17

18  [11] *See generally* Cicero Aff. Exh. C.

19  [12] *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966).

20  [13] Cicero Aff. ¶ 6 & Exhibit D, Adams Reply Report, at p. 13, l. 21 – p. 14, l. 8 (italics
    added) & Exhibit 7 thereto.

21

22  [14] Cicero Aff. at ¶ 10 & Exhibit H, ltr. and attachment 01/22/04 from M. Glaser to K.
    Watkins.

23

24                                    - 7 -

1

**b.     Argument**

2      January 9, 2004 marked the expert discovery cut-off in this litigation (*see* Part III,

3   *supra*), and Dr. Adams was not granted relief from that deadline.  Alterations to reports

4   from exhibits are not permissible, regardless of counsel's characterization of the

5   alterations.  The letter referenced at Note 10 illustrates the lengths to which Defendants

6   have gone and will likely continue to go, to get a "second bite at the apple," until curbed

7   by this Court's intervention.

8      Even more fundamentally, however, the Court should not allow introduction of

9   even the original Exhibit 7 to the Adams Reply Report in the first place.  That exhibit,

10  and commentary from Dr. Adams concerning it, is not limited to matters raised in the

11  Harris Report and hence is impermissible under this Court's *Case Management*

12  *Scheduling Order*:

13         Within **seven calendar days** thereafter, the opening parties may disclose any
           reply reports *limited solely to rebutting specific material in opposition reports.*
14         *Reply reports must be limited to true rebuttal* and should be very brief."  [Dkt.
           No. 82 at ¶ 7 (boldface in original; underline and italics added)].

15  Dr. Adams' attempt to add Exhibit 7 concedes that his initial report is defective for not

16  having addressed the "differences between the prior art and the claimed invention"

17  *Graham* factor.  Upon appropriate exclusion of Exhibit 7 and its corresponding report

18  text, the Court should regard Dr. Adams' analysis as incomplete and unreliable.

19

20

21

22

23

24                                    - 8 -

**3.     Dr. Adams Fails to Provide Motivations for All Asserted Prior Art Combinations, in Violation of the Court's Patent Local Rules.**

        **a.     Facts**

On May 14, 2003, Key Register served its *Preliminary Invalidity Contentions* [Dkt. No. 93].  On September 24, 2003, Key Register served its *Final Invalidity Contentions* [Dkt. No. 172].[15]  Those contentions cite the following prior art references:

    1.     "50 Ways to Touch Memory," published by Dallas Semiconductor Co. (hereinafter **"50 Ways"**);

    2.     International Patent Publication No. WO 95/04324 (hereinafter **"Morse Watchmans"**);

    3.     International Patent Publication No. WO 97/09687 (hereinafter **"Maloney '687"**); and

    4.     Dallas Semiconductor DS2407 Data Sheet (hereinafter **"the Data Sheet"**).[16]

Key Register's *Final Invalidity Contentions* recite a motivation to combine with respect to only two combinations of the foregoing prior art references: (1) 50 Ways + Morse Watchmans;[17] and (2) 50 Ways + the Data Sheet.[18]  Regarding combinability of

---

[15] Cicero Aff. at ¶ 3 & Exhibit A, *Final Invalidity Contentions*.

[16] Although page 2 of the *Final Invalidity Contentions* also cited a patent to Banks and a "MicroLAN Design Guide," neither of those references is applied in "Appendix A" or in "Appendix B" to the contentions.  *See* Cicero Aff. Exh. A.

[17] *Id.* at Appendix A, page 1 (quoting examiner's combination of 50 Ways and Morse Watchmans with respect to claims withdrawn from prosecution).  KeyTrak does not concede that the examiner's actions comprise a proper authority for motivation to combine, but acknowledges only that Key Register purports to recite a motivation for that prior art combination.  *See also id.* at Appendix B, pp. 2-3 (contending explicit teaching of combination), *but also see* Cicero Aff. Exh. I at 205:10 – 207:25 (acknowledging nothing explicit in either reference to combine one with the other).  KeyTrak advises the Court that Dr. Harris has not yet read and signed the transcript of his deposition.

1    cited references, Dr. Adams acknowledged that there is no express teaching in the prior

2    art to make the following prior art combinations:

3          • 50 Ways + Morse Watchmans  [Cicero Aff. Exh. I at 205:10 – 207:25];

4          • 50 Ways + Maloney '687  [*Id.* at 208:1 – 209:20];

5          • Maloney '687 + Morse Watchmans  [*Id.* at 209:21 – 211:3];

6          • Morse Watchmans + Note 104  [*Id.* at 211:4 – 212:2];

7          • Note 104 + Maloney '687  [*Id.* at 212:3-16];

8          • Note 106 + Morse Watchmans  [*Id.* at 212:17-23]; and

9          • Note 106 + Maloney '687  [*Id.* at 212:24 – 213:4]

10        **b.**    **Argument**

11        "If a combination of items of prior art makes a claim obvious, ***each*** such

12    combination, and the motivation to combine such items, must be identified."  Patent L.R.

13    3-3(b) (emphasis added).  Defendants are not in compliance with that rule.  Dr. Adams'

14    reports cite six total references against KeyTrak's patent, and KeyTrak has an inkling on

15    how Defendants will make their obviousness case only with respect to the two prior art

16    combinations set forth in the *Final Invalidity Contentions*, repeated in the Adams Initial

17    Report.  Thus, the Adams Initial Report suffers from the same flaws as do the

18    Contentions, *i.e.*, the failure to provide a motivation to combine with respect to <u>each</u> prior

19    art combination, as required by Patent L.R. 3-3(b).

20        Dr. Adams should be precluded from testifying about any prior art combination

21    that has not been supported with a motivation in the Adams Initial Report.  Testimony

---

22

23    [18] Cicero Aff. Exh. A at Appendix B, pp. 1, 4, & 5-6.

24                 - 10 -

1   about any other combinations would be prejudicial because KeyTrak still does not know

2   how Key Register or Dr. Adams will attempt to justify those combinations at trial.

3   Unless the Court acts to exclude Dr. Adams' testimony on un-linked combinations,

4   Defendants will have a license to engage in trial by ambush.

5        **4.**    **Dr. Adams' Analysis Relies Upon Two Prior Art References That are Subject to Exclusion for Not Having Been Disclosed in Key Register's Invalidity Contentions.**

6

7        On October 13, 2003, Defendants' counsel transmitted copies of two additional

8   documents contended to be "material prior art," namely, Dallas Semiconductor

9   Application Note 104 ("Note 104"), and Dallas Semiconductor Application Note 106

10   ("Note 106").[19]  Defendants have not amended their *Final Invalidity Contentions* to

11   include those references, nor have they yet sought leave of court to do so.  Nor have

12   Defendants yet indicated their intentions on whether they will do so.[20]

13        In the Adams Initial Report, Dr. Adams presents claim charts that are virtually

14   identical to those appearing in Appendix A to the *Final Invalidity Contentions*, except

15   including, for the first time in this litigation, Note 104 and Note 106.[21]  Moreover, Part

16   VIII.H. of the report is virtually identical to Appendix B to the contentions, except

17   including additional text directed to Notes 104 and 106, and except for certain formal

18   rewording (such as shortening "50 Ways to Touch Memory" to "50 Ways").[22]

19

20   [19] Cicero Aff. at ¶ 4 & Exhibit B, copy of 10/13/03 ltr. from M. Glaser to M. Cicero.

21   [20] Cicero Aff. Exh. I at 25:2 – 26:10.

22   [21] Cicero Aff. Exh. C at Attachment 2 and Cicero Aff. ¶ 9 & Exhibit G (comparisons).

23   [22] *Compare* Cicero Aff. Exh. A, App. B, to Cicero Aff. Exh. C at pp. 34-41.

24

- 11 -

1    With specific regard to Notes 104 and 106, Dr. Adams stated: "It requires all of

2    the references to invalidate the claims as obvious for all of the claim limitations."[23]

3        **b.    Argument**

4    The Adams Initial Report repeatedly cites Notes 104 and 106 in his obviousness

5    analysis, and Dr. Adams testified that those references were needed to make a case for

6    obviousness.  Also, as shown *supra*, Key Register did not cite either of those references

7    in its Invalidity Contentions, and has yet to definitively indicate whether it will seek to

8    amend those contentions.  The Patent Local Rules require Defendants to identify "each

9    item of prior art that allegedly anticipates each asserted claim or renders it obvious," and

10   to prepare a claim chart showing where each claim limitation is found in a cited prior art

11   reference.  Patent L.R. 3-3(a), (c).  Key Register can no longer amend its invalidity

12   contentions without leave of Court upon a showing of good cause.  Patent L.R. 3-7.  This

13   Court holds:

14       The patent local rules were adopted by this district in order to give claim charts
         more "bite."  The rules are designed to require parties to crystallize their theories
         of the case early in the litigation and to adhere to those theories once they have
15       been disclosed....  ***Unlike the liberal policy for amending pleadings, the
         philosophy behind amending claim charts is decidedly conservative***, and
16       designed to prevent the "shifting sands" approach to claim construction.

17   *Atmel Corp. v. Information Storage Devices, Inc.*, 1998 WL 775115 at *2 (N.D. Cal.

18   1998) (emphasis added).  The first time KeyTrak was presented with an obviousness

19   analysis involving Notes 104 and 106 was when its counsel saw the Adams Initial

20   Report.  The Local Rules do not countenance such belated disclosure.  Therefore, at the

21

22   [23] Cicero Aff. Exh. I at 20:6-12.

23

24                                    - 12 -

very least, all testimony directed to Notes 104 and 106 should be disallowed.

Additionally, since Dr. Adams viewed Notes 104 and 106 as necessary to assemble an invalidating combination of references, the Court should view the absence of those references as resulting in an incomplete and unreliable opinion.

### 5. Dr. Adams Cannot Testify About Secondary Considerations, Rendering Unreliable any Testimony About the Ultimate Issue of Obviousness.

#### a. Facts

In Part VII.F. of his Initial Report, Dr. Adams states:

> Taking secondary considerations into account is a necessary step when considering the issue of obviousness of a patent. Even though such evidence is not required for initial patentability, it is necessary to explicitly consider these factors when looking at invalidity due to obviousness, and *the absence of these factors reinforces the conclusion that the patent is obvious.*[24]

Further reflecting Dr. Adams' views upon legal principles governing secondary considerations, Dr. Adams testified as follows:

- "My understanding is that depending on the secondary considerations, at – at best they are neutral. At worst they can be evidence of obviousness." [Cicero Aff. Exh. I at 60:11-18].

- Dr. Adams recognized that the term "objective evidence of non-obviousness" was a synonym for "secondary considerations" [*Id.* at 66:17-23]; however, he then characterized "secondary considerations" as *subjective* evidence [*Id.* at 72:19 – 73:6].

- Dr. Adams views the secondary considerations as being entitled to less weight than other *Graham* obviousness factors [*Id.* at 72:4-18]. "I don't believe they are considered to be of the same weight." [*Id.* at 73:21-22].

---

[24] Cicero Aff. Exh. C at p. 32, ll. 7-10 (italics added); *but see Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 960 (Fed. Cir. 1986) ("[T]he absence of objective evidence 'is a neutral factor.'") (citation omitted).

1    • Dr. Adams deems the presence of "substantially similar" products on the
     market or of "a lot of technical references" to be a secondary consideration
2    [*Id.* at 62:22 – 63:7].

3    Dr. Adams did not do any legal research to find cases to determine whether the law

4    recognizes any secondary considerations other than commercial success, unsuccessful

5    attempts by others, or unexpected results [*Id.* at 66:17 – 71:7].

6           Dr. Adams repeatedly indicated he needed more time to consider the particular

7    secondary considerations discussed in the Harris Report.  Testimony specific to each such

8    consideration follows.

9           **Attempts to patent the invention by the accused infringer:**  Dr. Adams was not

10   aware that an attempt by an infringer to obtain a patent on essentially the same invention

11   as that claimed in the patent-in-suit operated as a secondary consideration.[25]   Thus, he

12   did not review Key Register's published patent application, which discloses and claims

13   the Key Register System.[26]  Nor did Dr. Adams interview the inventors named in that

14   application, discuss the application with Key Register's president, or discuss it with Key

15   Register's counsel prior to preparation of the Adams Initial Report.[27]  Dr. Adams

16   disavowed any need to review Key Register's application before reaching his ultimate

17   opinion and conclusion.[28]  Consequently, Dr. Adams could not answer the question of

18   why apparent good faith by the inventors named in that application should not operate as

19   _____

     [25] Cicero Aff. Exh. I at 92:6 – 93:9.

20   [26] *Id.* at 36:16-20;  *see also id.* at 75:5-18.

21   [27] *Id.* at 36:21 - 37:21.

22   [28] *Id.* at 44:11-21.

23

24                                          - 14 -

1   a secondary consideration.[29]  Despite acknowledging that the Harris Report discussed this

2   secondary consideration, Dr. Adams professed a need to think about the issue before

3   answering the foregoing question.[30]

4           **Advertisements of the accused infringer touting advantages of patented**

5   **invention:**  Dr. Adams was not aware that courts consider this to be a secondary

6   consideration.[31]  Dr. Adams was aware of the content of Key Register's Internet web site,

7   which recites the slogan "SEE THE LIGHT," depicts of a Key Register System

8   "CommKey," and recites the caption "CommKey has bright LED for Key Identification

9   and Selection."[32]  Yet Dr. Adams acknowledges he made no mention of Key Register's

10   web site in his report,[33] nor did he rely on anything in the web site in the formulation of

11   his opinion.[34]  Dr. Adams did not review any Key Register promotional material other

12   than the web site,[35] reasoning that it was not necessary for him to rely upon it.[36]

13   However, Dr. Adams testified that if it turns out that advertising or promoting features of

14   an accused product that are included within the claimed invention of the patent-in-suit is

---

[29] Cicero Aff. Exh. I at 89:7-17.

[30] *Id.* at 90:4 – 91:4.

[31] *Id.* at 97:2-9.

[32] *Id.* at 94:6 – 95:18.

[33] *Id.* at 97:20 – 98:6.

[34] *Id.* at 41:8-20.

[35] *Id.* at 40:9-16.

[36] *Id.* at 43:15-18.

- 15 -

1    a valid secondary consideration, then he would want to think about his initial opinion and

2    reconsider it.[37]

3        **Commercial success of the infringing device:**  Dr. Adams did not understand

4    that this could function as a secondary consideration.[38]  He had learned from Key

5    Register personnel that "Key Register's product was receiving good acceptance in the

6    market."[39]  He did not, however, have any opinion as to why Key Register was

7    experiencing commercial success.[40]  Dr. Adams testified that he wanted an opportunity to

8    reconsider his opinion in light of the prospect that the commercial success of the Key

9    Register System may be a secondary consideration for nonobviousness.[41]

10       **b.    Argument**

11       From the case law cited in the assumptions section of the Harris Report, it is

12   abundantly clear that Dr. Adams' various views on the law of secondary considerations

13   are erroneous.  Furthermore, since Dr. Adams professed a need to reconsider his opinion

14   with respect to each of the three secondary considerations discussed in the Harris Report,

15   Dr. Adams' opinion on that subject is incomplete.  Since secondary considerations

16   comprise one of the *Graham* factors, this necessarily renders any testimony on the

17   _____

     [37] Cicero Aff. Exh. I at 98:14-22.

18   [38] *Id.* at 106:1-9 & 107:3-8.

19   [39] *Id.* at 38:2-11 & 39:11-17.  *See also id.* at 78:9-14 (answering "okay" to question: "And
     do you understand that the disclosure in here covers a commercial product which Key
20   Register concedes has experienced commercial success in the marketplace?").

21   [40] *Id.* at 38:18-23 & 39:18 – 40:2.

22   [41] *Id.* at 107:12 – 108:10.

23

24                                    - 16 -

_____

1    ultimate issue of obviousness likewise incomplete.  These errors and incomplete areas

2    render any testimony by Dr. Adams on these subjects patently unreliable.

3    **B.    The Court Should Exclude All Testimony Regarding Unenforceability.**

4           **1.    Dr. Adams Cannot Testify on the Ultimate Issue of Unenforceability,**
5                  **Which is a Question of Law.**

6                  **a.    Facts**

7           The Adams Initial Report discusses unenforceability at Parts VI.A. and VII. (pp.

8    12-26).  Dr. Adams renders an opinion on the ultimate issue of unenforceability, as well

9    as on the subsidiary issues of materiality and intent.[42]  Similarly, Dr. Adams concludes:

10   "[T]he finder of fact in this case can infer from the facts the KeyTrak intentionally failed

11   to disclose to the PTO [Maloney '687] and the DS2407 Data Sheet."[43]  There is no

12   discussion in the Adams Initial Report of any legal standards governing determinations of

13   inequitable conduct, including the standard of materiality.  Nor is there any indication

14   from the Report that Dr. Adams is a patent law expert.

15          Dr. Adams concludes by opining on the ultimate issue of unenforceability:

16          It is my further opinion that KeyTrak and its agents have engaged in inequitable
            conduct by withholding the material prior art from the USPTO in connection with
17          the '379 Patent which I have identified in my December 12 Report and which if
            disclosed, would have rendered each of the claims in the '379 Patent as a whole,
18          obvious.[44]

19

20   _____

     [42] Cicero Aff. Exh. A at p. 12, ll. 15-19.

21   [43] *Id.* at p. 44, ll. 5-8.  The Data Sheet is not mentioned in Defendants' pleadings.

22   [44] *Id.* at p. 31, ll. 11-15.

23

24                                          - 17 -

b.      **Argument**

"The defense of inequitable conduct is entirely equitable in nature, and thus not an issue for a jury to decide." *PerSeptive Biosys., Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1319 (Fed. Cir. 2000).  Thus, under Ninth Circuit law, Dr. Adams cannot be allowed to testify on the ultimate issue of inequitable conduct.  *See Revlon Consumer Prods. Corp. v. L'oreal S.A.*, 1997 WL 158281 at *3 (D. Del. 1997) ("Mr. Witherspoon may not testify as to substantive issues of patent law, including inequitable conduct.").

2.      **Dr. Adams is Not Qualified to Testify on Inequitable Conduct Issues.**

a.      **Facts**

Dr. Adams indicated that he testified in three prior federal cases, two of which were patent cases.  Only once has Dr. Adams previously testified concerning patent validity.[45]  Dr. Adams did not attend law school, did not take the Patent Bar Exam, and never took a patent bar exam review course.[46]  Dr. Adams does not consider himself to be qualified by way of formal education to render an opinion on matters of law, specifically patent law, nor does he consider himself otherwise competent to render an opinion on matters of patent law.[47]

Regarding matters of patent examination procedure, Dr. Adams admits that he is "not thoroughly schooled in how a patent examiner goes about examining and allowing a

---

[45] Cicero Aff. Exh. I at 27:7 – 30:1.

[46] *Id.* at 30:2 – 31:19.

[47] *Id.* at 31:20-24 & 32:11-15.

- 18 -

patent to issue."[48]  Nor has Dr. Adams ever had a conversation with a patent examiner to find out what the standard procedure is and how examiners go about reviewing an application.[49]  As Dr. Adams stated: "I've never worked in that area, and I reply upon, you know, patent attorneys for better guidance there."[50]

### b.    Argument

As demonstrably clear from the foregoing facts, Dr. Adams is not a patent law expert, nor is he an expert concerning patent examination procedures.  For this reason alone, Dr. Adams should be barred from telling the jury whether the threshold levels of materiality and intent have been established.  Independent additional reasons counsel for exclusion of testimony on each of those subjects, as detailed *infra*.

### 3.    Dr. Adams Does Not Know the Standard of Materiality.

### a.    Facts

Dr. Adams testified that the term "material" means "relevant and related,"[51] or "highly relevant,"[52] "or particular interest to this particular case."[53]  Dr. Adams could not

---

[48] Cicero Aff. Exh. I at 133:10-14.

[49] *Id.* at 134:1-5.

[50] *Id.* at 50:16-21.

[51] *Id.* at 53:11-21.

[52] *Id.* at 53:22 – 54:4.

[53] *Id.* at 55:2-4.

- 19 -

1  specify either a document or a statement of law supporting that definition, referring

2  instead only to his "understanding based upon previous experience."[54]

3  **b.  Argument**

4  Dr. Adams' definitions of "material" (Part III.D.3, *supra*) are all incorrect as a

5  matter of law.  In assessing materiality, the Federal Circuit acknowledged: "Thus, we

6  have not decided whether the standard for materiality in inequitable conduct cases is

7  governed by equitable principles or by the Patent Office's rules." *Dayco Prods., Inc. v.*

8  *Total Containment, Inc.*, 329 F.3d 1358, 1364 (Fed. Cir. 2003).  If the latter, the

9  applicable rule provides, in pertinent part:

10  (b) Under this section, information is material to patentability when it is ***not***
     ***cumulative to information already of record*** or being made of record in the
11  application, and
       (1) It establishes, by itself or in combination with other information, a
12  prima facie case of unpatentability of a claim;  or
         (2) It refutes, or is inconsistent with, a position the applicant takes in:
13         (i) Opposing an argument of unpatentability relied on by the Office, or
           (ii) Asserting an argument of patentability.

14  37 C.F.R. § 1.56(b) (1998) (emphasis added).  The Federal Circuit also acknowledged a

15  "reasonable examiner" standard, *i.e.*, "'a reasonable examiner would have considered

16  such prior art important in deciding whether to allow the parent application.'" *Dayco*,

17  329 F.3d at 1363 (citations omitted).  Unfamiliar as he is with PTO examiners'

18  procedures for reasons stated above, Dr. Adams cannot possibly opine what a "reasonable

19  examiner" would consider important.  Thus, not only has Dr. Adams incorrectly defined

20  "material," he also is not qualified to testify on the subject even were have to have

21

22  [54] Cicero Aff. Exh. I at 54:5-9

23

24  - 20 -

1   recognized the proper standards.  Testimony on materiality should thus not be allowed:

2   "We encourage exercise of the trial court's gatekeeper authority when parties proffer,

3   through purported experts, not only unproven science, but markedly incorrect law."

4   *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996).

5       **4.     Dr. Adams' Testimony on Materiality is Incomplete.**

6           **a.     Facts**

7       Under cover letter to Defendants' counsel dated December 8, 2003, which

8   Defendants' received on December 9, 2003 at 10:18 a.m, KeyTrak's counsel updated

9   KeyTrak's document production regarding a continuing patent application.[55]  These

10  documents included an *Interview Summary* in which the Examiner concluded that

11  Maloney '687 and the Data Sheet were cumulative over the art of record as against the

12  pending claims.[56]

13      Turning to the impact of the Examiner's cumulativeness conclusion in KeyTrak's

14  continuing application, Dr. Adams does not compare the amended claims in that

15  application with the claims in the '379 Patent.  Instead, for reasons not explained, he

16  compares the amended claims in the continuing application with earlier-published claims

17  in that same application.[57]  Dr. Adams then claims an inability to fully assess the issue

18  because of a purported nonproduction by KeyTrak of the complete file history of the

---

19

20  [55] Cicero Aff. at ¶ 7 & Exhibit E, ltr. 12/08/03 from M. Cicero to M. Murphy, including printout of Federal Express® confirmation.

21  [56] Cicero Aff. at ¶ 11 & Exh. I at Exhibit 12 to deposition.

22  [57] Cicero Aff. Exh. D at p. 29, ll. 10-13.

23

24                - 21 -

1  continuing application.  Specifically, Dr. Adams states that he "cannot determine the

2  reasons that the Examiner rejected the original claims," thus implying that KeyTrak did

3  not produce the office action setting forth that rejection.[58]  However, KeyTrak produced a

4  copy of that Office Action in August 2003 as Documents Nos. KT-C-0006867-82.[59]

5  Finally, the Adams Reply Report states that the Examiner's cumulativeness

6  determination is somehow undermined because he did not consider Notes 104 and 106.[60]

7       In his deposition, Dr. Adams acknowledged that the *Interview Summary* of

8  KeyTrak's continuation patent application shows that the Examiner concluded that

9  Maloney '687 (the reference upon which Defendants base their unenforceability case)

10  and the Data Sheet are cumulative prior art with respect to the pending claims.[61]  He also

11  acknowledged that the significance of Exhibit 12 to his deposition was discussed in the

12  Harris Report, but he stated that he was not "able to fully consider all of the issues" raised

13  by that exhibit.[62]  At one point, Dr. Adams testified that although he could be asked to

14  conduct additional analysis, he felt such additional analysis would not change his

15

16

17

---

18  [58] Cicero Aff. Exh. D at p. 30, ll. 1-6 & Exhibit 3 thereto.

19  [59] Cicero Aff. at ¶ 8 & Exhibit F (copy of Office Action rejecting Claim 1).

20  [60] Cicero Aff. Exh. D at p. 30, l. 7 – p. 31, l. 6.

21  [61] Cicero Aff. Exh. I at 217:16 – 218:14 & Exhibit 12 thereto.

22  [62] *Id.* at 224:8 –225:1.

23

24                                        - 22 -

1   conclusion because "the file date and issue date are significant."[63]  Later, however, Dr.

2   Adams testified as follows:

3         **Q:  (By Mr. Capp)  So, in other words, you are willing to reconsider your opinion and conclusion in light of what's transpired in the continuation application, correct?**

4

5         MR. GLASER:  Objection to the form of the question.
         You may answer.

6

7         **A: Yes.**

8         **Q:  (By Mr. Capp)  So in that sense the opinion and conclusion in your initial expert report is not your final opinion and conclusion on this matter, is it, Dr. Adams?**

9

10         MR. GLASER:  Objection to the form of the question.

11         **A:  To the extent that I may reconsider in light of these new documents, I may file a supplemental report.[64]**

12       **b.**    **Argument**

13     As shown *supra*, when confronted with Exhibit 12 to his deposition, which

14   included the *Interview Summary* evidencing the examiner's conclusion as to

15   cumulativeness, Dr. Adams indicated that he was willing to reconsider his conclusion as

16   to the materiality of Maloney '687.  KeyTrak and the Court are uninformed as to Dr.

17   Adams' intentions, so his opinion on materiality is incomplete and hence unreliable.

18   Furthermore, no supplementation is permitted under the Court's *Case Management*

19   *Scheduling Order*, which provides:

20

21   [63] Cicero Aff. Exh. I at 222:4-14;  *see also id.* at 225:2-8 ("At this point I do not believe I

22   would change my opinion based on the information that I have at this point.").

    [64] *Id.* at 226:12 – 227:3.

23

24              - 23 -

1  At trial, the direct testimony of experts will be limited to the matters disclosed in
   their reports. Omitted material may not ordinarily be added on direct
2  examination. This means the reports must be *complete* and sufficiently detailed.

3  [Dkt. No. 82 at ¶ 9]. Dr. Adams' testimony concerning materiality is therefore

4  incomplete and in violation of an Order of this Court. The Court should therefore

5  exclude that testimony.

6  **5.      Dr. Adams' Testimony on Intent Will Not Help the Jury, Since the
           Jury Will Not Likely Hear Evidence of Intent.**

7  In its Order of December 17, 2003, this Court stated: "The only issue that might

8  deserve a separate trial (while the jury is deliberating) is any evidence relating to an

9  intent to deceive the examiner." [Dkt. No. 209]. The Court also indicated: "The final

10 extent of any bifurcation will be decided at the final pretrial conference." [*Id.* at p.2]. If

11 the Court adheres to its plan to try the intent issue separately out of the jury's presence,

12 then it follows that the Court should preclude Dr. Adams from testifying on the intent

13 issue, since that would be of no help to the jury.

14

15     Respectfully submitted, this the 22nd day of January, 2004.

16 WOMBLE CARLYLE SANDRIDGE          FLIESLER MEYER LLP
   & RICE, PLLC

17 Kirk W. Watkins (*pro hac vice*)          /s/ Martin C. Fliesler
   William A. Capp (*pro hac vice*)      Martin C. Fliesler (State Bar No.: 073768)
18 Michael A. Cicero (*pro hac vice*)    Larry T. Harris (State Bar No.: 209044)
   1201 West Peachtree Street             Michael Robbins (State Bar No.: 224087)
19 Atlanta, GA 30309                      Four Embarcadero Center, Fourth Floor
   Telephone: (404) 872-7000             San Francisco, California  94111
20 Facsimile: (404) 870-4836             Telephone: (415) 362-3800
                                         Facsimile: (415) 362-2928
21
   Attorneys for Plaintiff, KEY TRAK, INC.
22

23

24                                      - 24 -